THE HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JAMES A. NOYES, a married man,<br><br>        Plaintiff,<br><br>    v.<br><br>STATE FARM GENERAL INSURANCE COMPANY; STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, STATE FARM LIFE INSURANCE COMPANY, STATE FARM FIRE AND CASUALTY COMPANY; DOE COMPANIES 1-5,<br><br>        Defendants. | No.: C08-05032 RBL<br><br>DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL |

## I. INTRODUCTION

The information plaintiff seeks through Interrogatory Nos. 2, 3, and 5 and Request for Production No. 3 is not relevant to any issue in this case because that information is only aimed at supporting a claim Mr. Noyes cannot make. As such, these requests are also not reasonably calculated to lead to the discovery of admissible evidence. Further, even if these discovery requests are relevant, they are impermissibly broad. Indeed, plaintiff's requests amount to little more than a fishing expedition. Accordingly, defendants State Farm General

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL   Page 1

1  Insurance Company, State Farm Mutual Automobile Insurance Company, State Farm Life
2  Insurance Company, and State Farm Fire and Casualty Company (collectively "State Farm")
3  respectfully request the Court deny plaintiff's Motion to Compel, including its request for
4  fees and costs. Finally, should it prevail, State Farm moves this Court for an order awarding
5  State Farm its reasonable fees and costs associated with opposing this Motion.

## II. STATEMENT OF FACT

### A. Mr. Noyes' relationship with State Farm.

This case arises out of an agency agreement between Mr. Noyes and State Farm. Under the agreement, State Farm "appoints" the individual as an Agent. As stated in the agreement and confirmed by Mr. Noyes in his Motion to Compel, the agent's relationship with State Farm is that of an independent contractor. (Docket No. 13, p. 2).

### B. Mr. Noyes' employees make sexual harassment, sexual discrimination, and hostile work environment claims against him.

As an agent, Mr. Noyes operated his own insurance office providing State Farm insurance. Mr. Noyes also managed his own staff which consisted of four female employees: Susan Connelly, Cheryl Erickson, Candice Broomfield, and Youkie Laney.

On November 5, 2004, Susan Connelly wrote a letter to John Jackson of the Seattle Agency Field Office advising him that Mr. Noyes had been sexually harassing various female employees. Mr. Jackson contacted Vice President – Agency, Carolyn Lee to address the allegations. Ms. Lee then contacted State Farm's audit team to conduct an investigation.

On November 11, 2004, State Farm investigator, Gary Gipson, interviewed Ms. Connelly, Ms. Erickson, Ms. Broomfield, and Ms. Laney. Each complainant alleged sexual harassment, hostile work environment, and/or sexual misconduct. Mr. Gipson documented each interview.

### C. Mr. Noyes is given the opportunity to address the allegations.

On November 15, 2004, Mr. Gipson met Mr. Noyes to discuss the allegations brought against him by his employees. Mr. Noyes admitted to almost all of the allegations. At the end of the interview, Mr. Gipson asked if Mr. Noyes had anything else to make a matter of record. Mr. Noyes did not provide any additional information.

### D. Mr. Noyes meets with Mr. Gipson and Ms. Lee to discuss the investigation.

On November 18, 2004, Mr. Noyes met with Mr. Gipson and Ms. Lee. Mr. Gipson went over the findings of his investigation with Mr. Noyes. According, to Mr. Noyes, Ms. Lee said that State Farm would continue investigating the allegations by contacting his former employees.

### E. Mr. Noyes terminates his agency.

On November 19, 2004, Mr. Noyes voluntarily, and without solicitation, terminated his agency agreement with State Farm.

### F. Mr. Noyes files this lawsuit.

On November 7, 2007, Mr. Noyes filed suit against State Farm asserting claims for (1) breach of good faith and fair dealing as required by the Franchise Investment Protection Act; (2) fraud under the Franchise Investment Protection Act; (3) fraud under the common law; (4) negligent misrepresentation; (5) engagement of acts practices and course of business which operated a deceit upon Plaintiff; (6) age discrimination in violation of RCW 49.60, *et. seq.*; and (7) violation of the Washington Consumer Protection Act. (Salgado Decl., ¶ 2, p. 9).

### G. The parties propound discovery.

Both Mr. Noyes and State Farm propounded discovery requests in June 2008. (Docket No. 13, p. 3, Declaration of Gail R. Manuguid, ¶ 2, p. 4). After several discussions, the parties agreed to extend the deadline for responding to their respective requests to September 19, 2008. (Manuguid, Decl., ¶ 3, p. 4).

H. **The parties meet and confer regarding the State Farm's discovery responses.**

On October 27, 2008, counsel for Mr. Noyes and State Farm conferred via telephone. (Salgado Decl., ¶ 3). In the conference, plaintiff's counsel contended that State Farm's discovery responses were insufficient. (Salgado Decl., ¶3). Specifically, he took issue with its objections to Interrogatory Nos. 2, 3, and 5, and Request for Production No. 3 (Salgado Decl., ¶ 4):

> Interrogatory No. 2: Identify each Insurance Agent since January 2002, who had at least five years experience as an agent for Defendant, whose agent was terminated either voluntarily or at Company request.
>
> Interrogatory No. 3: Identify each Insurance Agent who was not offered the opportunity to transition to a new agent into their accounts and/or territory since 2002 and the reason why such transition was not made available to such Agent.
>
> . . .
>
> Interrogatory No. 5: Identify any Insurance Agent of the Defendants against whom an allegation of sexual harassment, hostile work environment or sexual misconduct was made and set forth what action, if any, was taken by the Defendant in response to such allegation(s).
>
> . . .
>
> Request for Production No. 3. Produce all material regarding any allegation of sexual harassment, hostile work environment or sexual misconduct by other Insurance Agent for Defendants since the year 2002, including but not limited to any tape recordings, interview notes, investigative file, correspondence, memorandum, e-mail or other document which addresses either the allegations, investigation of the allegations, Defendants' response or proposed response to such allegations or actions taken by the Defendants in response to such allegations.

(Docket No. 13-2, pp. 8-10, 15).

State Farm's counsel asked plaintiff's counsel to amend these interrogatories and request for production by including reasonable limitations as to the appropriate subject matter and as to geographic and temporal scope. (Salgado Decl., ¶ 5). Plaintiff's counsel denied this request and filed this Motion. (Salgado Decl., ¶ 5).

## III. ARGUMENT

**A.   The burden of plaintiff's proposed discovery outweighs its likely benefit as Mr. Noyes has no age discrimination claim.**

Defining the scope of discovery, Fed. R. Civ. P. 26(b)(1) provides, in pertinent part, that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ." Further, all discovery is subject to the limitations imposed, in part, by Fed. R. Civ. P. 26(b)(2)(C)(iii) which states,

> On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, . . . and the importance of the discovery in resolving the issues.

A request for discovery should not be allowed if it is clear that the information sought can have no possible bearing on the claim or defense of a party. *Owens v. Sprint/United Mgmt Co.*, 221 F.R.D. 649, 652 (D.Kan. 2004). By its nature, such a request imposes undue burden and expense on the responding party. *See id.* Here, the burden of responding to Mr. Noyes Interrogatory Nos. 2, 3, and 5 and his Request for Production No. 3 is plainly outweighed by the likely benefit. State Farm is a national insurance carrier with over 17,062 agents across the country. (Declaration of Richard Knudsen, ¶ 2). This number increases when including former agents from at least the last five years. Responding to any of these requests would require State Farm to analyze the records of tens of thousands of agents.

With respect to any benefit that may be gained, Mr. Noyes claims that the discovery requests at issue are necessary only to support his age discrimination claim. (Docket No. 13, p. 6). Mr. Noyes however, has also conceded that he is an independent contractor. (Docket No. 13, p. 2). As held by the Washington State Supreme Court, age discrimination claims may not be asserted by an independent contractor. *Kilian v. Atkinson*, 147 Wn.2d 16, 50 P.3d 638 (2002). Accordingly, any discovery request seeking information or documents as to the ages of other agents, reason for or nature of the termination of the agency agreement of

1 other agents, the sexual harassment, hostile work environment or sexual misconduct claims
2 against other agents have no relevance to this case. Furthermore, they are not reasonably
3 calculated to produce admissible evidence. The burden and expense of analyzing
4 voluminous records that have no bearing on any issue in this case clearly exceeds the scope
5 of discovery defined under Fed. R. Civ. P. 26(b)(1). Accordingly, the Court should deny this
6 Motion as to each request at issue.

**B.    Even if Mr. Noyes' discovery requests are found to be more beneficial than burdensome, plaintiff should not be permitted to conduct a fishing expedition.**

**1.    Mr. Noyes made no effort to tailor these discovery requests to his allegations.**

Even if the Court allows Mr. Noyes to seek information and documents for the purpose of comparing Mr. Noyes to other agents, his discovery requests are impermissible because he has made no attempt to limit his requests to seek only the information relevant to his claims. Although the rules governing discovery are generally accorded liberal treatment, it is well established that there are limits to what a party may properly seek via discovery, even in a discrimination context. *Rodger v. Electronic Data System, Corp.*, 155 F.R.D. 537, 539 (E.D.N.C. 1994). "District courts need not condone the use of discovery to engage in 'fishing expeditions[s]." *Rivera v. NIBCO*, 364 F.3d 1057, 1072 (9th Cir.2004). Indeed, Courts will not compel discovery that is wholly speculative. *Id.* Rather, discovery must be tailored to the issues involved in the particular case. *Robbins v. Camden City Bd. of Edu.*, 105 F.R.D. 49, 55 (D.N.J. 1985). Moreover, responses sought must comport with the traditional notions of relevancy and must not impose undue burden on the responding party. *Id.* The party seeking discovery has the burden of showing clearly that the information sought is relevant to the subject matter of the action and would lead to admissible evidence. *Owens v. Sprint/United Mgmt. Co.*, 221 F.R.D. 649, 652 (D.Kan. 2004).

Here, Mr. Noyes has failed to show how the identities of these agents relate to his particular claims. Because his Interrogatory Nos 2, 3, and 5 and his Request for Production

No. 3 are not tailored to the issues in this case, they are not relevant. Moreover, they are overbroad as to geographic location, subject matter, and as to Interrogatory No. 5, time. Further, they impose undue burden and expense on State Farm. Accordingly, these requests exceed the scope of discovery and Mr. Noyes' Motion to Compel must be denied.

**C.   These discovery requests are irrelevant and overbroad because they seek information about individuals outside his geographic location who are not similarly-situated.**

When requesting discovery in an age discrimination suit, the circumstances of the other employees must be similar enough to the plaintiff's circumstances to make comparisons productive. *Balderston v. Fairbanks Morse Engine Division of Coltec Industries*, 328 F.3d 309, 320 (7th Cir. 2003)(limiting discovery to the relevant corporate department, similarly situated employees, time period, and decision makers). Discovery should be reasonably related to the circumstances involved in the alleged discrimination such as the individuals who were allegedly involved in the conduct. *Sorosky v. Burroughs Corp*, 826 F.2d 794, 805 (9th Cir. 1987)(limiting discovery to the facility in which plaintiff worked because plaintiff's lawsuit was focused on his employment which occurred only at that facility); *Rodger v. Electronic Data System, Corp.*, 155 F.R.D. 537, 540 (E.D.N.C. 1994)(denying plaintiff's motion to compel company-wide discovery where plaintiff worked only within one division of the company and was supervised by the president of that division). To that end, courts have consistently limited the discovery in discrimination cases to the facility or division where the plaintiff was employed. *Sallis v. Univ. of Minn.*, 408 F.3d 470, 478 (8th Cir. 2005); *see Carman v. McDonnell Douglas Corp.*, 114 F.3d 790, 792 (8th Cir. 1997). These courts recognized that companywide statistics are usually not helpful in establishing a discriminatory motive because those who make employment decisions vary across divisions. *Sallis*, 408 F.3d at 478. Indeed, the Supreme Court has emphasized the importance of looking to the proper "base group" when making comparisons and examining all of the surrounding facts and circumstances to identify the proper

comparators. *See Hazelwood Sch. Dist. v. United States*, 433 U.S. 299, 308, 312, 97 S.Ct. 2736, 53 L.Ed.2d 768 (1977).

In all of the discovery requests at issue, Mr. Noyes seeks information on agents nation-wide. However, only those agents aligned with the same Market Agency Field Office[1] and market executives (i.e., the Agency Field Executive and Vice President – Agency) can be deemed proper comparators to Mr. Noyes. *Rodger*, 155 F.R.D. at 540; *Prouty v. Nat'l Railroad Passenger Corp.*, 99 F.R.D. 545, 547 (D.D.C. 1983)(limiting discovery to the department in which the plaintiff worked and those other departments under the jurisdiction of the larger departmental unit which supervised all the departments); *In re Western Dist. Xerox Litigation*, 140 F.R.D. 264270 (W.D.N.Y. 1991)(employees who alleged that their termination violated the ADEA were not entitled to company-wide discovery where employment decisions were made by the individual employing units). Any discovery beyond Mr. Noyes' market Agency Field Office seeks information on individuals not similarly-situated. Thus any comparisons to them would be irrelevant and improper.

While it is true that some courts have permitted discovery beyond a plaintiff's geographical location, these cases are distinct from the case at hand. In those cases, the employment decision at issue was the product of a company-wide practice or influenced by personnel beyond the plaintiff's facility or office. *Compare Rodger v. Electronic Data Systems, Corp.*, 155 F.R.D. 537, 540 (E.D.N.C. 1994)(allowing discovery beyond the facility in which plaintiff to the division in which plaintiff worked because plaintiff was ultimately supervised by the division's president) *with Pacheo v. Mineta*, 448 F.3d 783, 793 (5th Cir. 2006)(denying plaintiff's motion to compel discovery of data for the entire region where plaintiff had never alleged discrimination by anyone other than the manager at his facility). For example in *Diaz v. American Telephone &Telegraph*, 752 F.2d 1356, 1363 (9th Cir.

---

[1] Market Agency Field Offices are defined by geographic location. (Knudsen Decl., ¶ 3).

1985), the plaintiff alleged that his employer engaged in a company-wide policy of discrimination. Based on that allegation, the court held that it was irrelevant whether the same manager made all the hiring and promotion decisions about which the plaintiff sought information because the company's overall policies controlled the manner in which its supervisors made those decisions. *Id.* at 1363. The court permitted company-wide discovery recognizing that one way of discerning a *company's* motives is by ascertaining whether the company's policies encouraged discriminatory employment decisions by its supervisory personnel. *Id.* at 1364.

Mr. Noyes reliance on *Diaz* is misplaced. Unlike the plaintiff in *Diaz*, Mr. Noyes makes no allegations of company-wide discrimination nor does he allege that company-wide policies contributed to the alleged discrimination. Further, Mr. Noyes does not attribute the allegedly discriminatory behavior to any State Farm employee outside of his market. Instead, Mr. Noyes' allegations are focused on the behavior of the State Farm employees that provided oversight to his market. Mr. Noyes specifically identified the persons he believes to be responsible for his alleged discriminatory treatment, namely the investigator who investigated the sexual misconduct claims against Mr. Noyes and the Agency Vice President located in Dupont, Washington. (Salgado Decl., ¶ 2, p. 8). These individuals were located within the same State Farm market as Mr. Noyes and provide oversight to all State Farm agents within that market. Where, as here, the allegations of discrimination are focused on the behavior of individuals in a particular geographic location, discovery must be limited to that location. *Sallis*, 408 F.3d at 478 (denying discovery as to every allegation of discrimination brought against the university where plaintiff's entire employment history was in one department).

### 1. Mr. Noyes' requests are also overbroad because they seek information on individuals who cannot allege the same type of discrimination as him.

Discovery must also be limited to the type of discrimination alleged. *See Robbins*, 105 F.R.D. at 61-63. In his Interrogatory No. 2, Mr. Noyes seeks information on *every* State Farm agent whose agency was terminated since January 2002 regardless of the reason behind or nature of the termination and regardless of the agent's age. Therefore, it is not reasonably calculated to discover evidence of other instances of age discrimination as Mr. Noyes contends. Discovery is intended to provide the parties with the opportunity to learn about the claims they have made, not to open up a fishing expedition that allows parties to gather information unrelated to their claims.

Although Interrogatory No. 5 is more particularly focused in that it seeks information on other agents against whom allegations of sexual harassment, hostile work environment, and sexual misconduct were made, those agents must still be similarly-situated to Mr. Noyes to be appropriate comparators. Whether an agent committed a similar act of wrongdoing of comparable seriousness is only part of the inquiry. The other, and perhaps more relevant part, is how the wrongdoing was handled by the decision maker. Accordingly, an appropriate comparator would be an agent who committed a similar act of wrongdoing of comparable seriousness *within the same market* as Mr. Noyes because only those individuals would be subject to the same market Field Agency Executives.

### 2. Mr. Noyes' discovery requests are also impermissible because they are overbroad as to temporal scope.

State Farm further objects to Interrogatory No. 5 because it lacks temporal limitations. Courts addressing discrimination claims have frequently tailored discovery requests to encompass a reasonable time period both before and after the discriminatory event being alleged. *Wards Cove Packing Co., Inc. v. Atonio*, 490 U.S. 642, 657, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989). As Mr. Noyes points out in his Motion, the acceptable timeframe for such requests is generally between three and five years. (Docket No. 13, p. 6). By Mr.

Noyes' own logic, this request is overly broad and State Farm should not be compelled to produce information beyond a reasonable timeframe.

### 3. Responding to the discovery requests at issue would impose undue burden and expense on State Farm.

As discussed above, a response to Interrogatory Nos. 2, 3, and 5 and Request for Production No. 3 must not be compelled because it would subject State Farm to undue burden and expense. Mr. Noyes denies that his requests are unduly burdensome, claiming that he is seeking information on a "small sub-group" of agents. (Docket No. 13, p. 7). This reasoning ignores the fact that State Farm would be required to analyze the records of tens of thousands of agents to identify these agents. With respect to Interrogatory No. 3, State Farm would need to take the additional step of determining the circumstances surrounding the "transition" of an agent's accounts. Because agents are independent contractors and are not directly supervised or managed by State Farm, obtaining the information to make these determinations would be both labor and cost-intensive. Based on the foregoing, this burden and expense far outweighs any benefit to Mr. Noyes.

### D. Mr. Noyes is not entitled to attorneys' fees.

Although Fed. R. Civ. P. 37(a)(5)(A) requires courts to award attorneys fees to the moving party on a motion to compel if the motion is granted, courts must not order this payment if the opposing party's nondisclosure, response, or objection was substantially justified. As set forth more fully above, State Farm's responses to Mr. Noyes' Interrogatory Nos. 2, 3, and 5 and his Request for Production No. 3 are supported by relevant case law, and are therefore, substantially justified. Thus, in the event Mr. Noyes prevails on his Motion, payment of attorneys' fees must not be ordered.

### E. State Farm is entitled to attorneys fees if this Motion is denied.

If a motion to compel is denied and after an opportunity to be heard, the court must require the moving party, the attorney filing the motion, or both to pay the party who

opposed the motion its reasonable expenses incurred in opposing the motion, including attorneys' fees. Fed. R. Civ. P. 37(a)(5)(B). Accordingly, if this Motion is denied, State Farm respectfully requests an award of its reasonable attorneys' fees associated with opposing this Motion, in an amount to be submitted by cost bill at a later time.

## IV. CONCLUSION

The interrogatories and request for production at issue seek information that is not relevant to Mr. Noyes claim. Further, he has made no attempt to reasonably limit the scope of discovery. In particular, he seeks information regarding individuals who are not similarly situated, who have not allege the same discriminatory treatment as Mr. Noyes, and who have had no interaction with the individuals Mr. Noyes accuses of discrimination. Accordingly, these requests go well beyond the permissible scope of discovery and responses to such should not be compelled. Additionally, even if this Court grants this Motion, there are no grounds for awarding attorneys' fees to Mr. Noyes. State Farm's responses to the requests at issue are substantially justified. Finally, should this Court deny this Motion, State Farm respectfully requests an order awarding reasonable attorneys' fees associated with opposing this Motion as required under Fed. R. Civ. P. 37(a)(5)(B).

DATED this 17th day of November, 2008.

BULLIVANT HOUSER BAILEY PC

By /s/Gail R. Manuguid
Pamela Salgado, WSBA #22741
Gail R. Manuguid, WSBA #37916

Attorneys for Defendants State Farm

10903290.2

**CERTIFICATE OF SERVICE**

I hereby certify that on November 17, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the persons listed below:

Richard H. Wooster
Mann, Johnson, Wooster & McLaughlin, P.S.
1901 South "I" Street
Tacoma, WA  98405
rich@mjwmlaw.com

Suzanne M. Petersen
suzanne.petersen@bullivant.com